IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| PERK OSTREWICH, § | | |
| § | | |
| *Plaintiff,* § | CASE NO. _____ | |
| § | | |
| vs. § | | |
| § | | |
| CITY OF PALACIOS, TEXAS § | | |
| and TOBIE BIAS § | | |
| § | | |
| *Defendants.* § | JURY TRIAL DEMANDED | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff Perk Ostrewich ("Plaintiff") files this Complaint against the City of Palacios, Texas (the "City") and Palacios Chief of Police Tobie Bias ("Chief Bias") (collectively "Defendants") and shows as follows:

### I.
### CASE OVERVIEW

1.1   This lawsuit asserts causes of action for First Amendment retaliation, violations of the Texas Constitution, or, in the alternative, age discrimination. The Palacios Police Department (a department of the City) and Police Chief Tobie Bias unlawfully fired Plaintiff in retaliation for his exercise of free speech including but not limited to a criminal complaint he filed with the Matagorda County Sheriff's Office (the "MCSO") regarding an ongoing trespassing violation that impeded him from accessing his land. The firing was in contravention of statutory protections and was based on the enforcement of alleged rules, policies, and procedures that are either not typically enforced or were disparately and more strictly enforced against Plaintiff than his peers.

1

## II.
### JURISDICTION AND VENUE

2.1   Jurisdiction of Plaintiff's claim for First Amendment retaliation is conferred on this Court by 42 U.S.C. § 1983.

2.2   Federal question jurisdiction is conferred on this Court by 28 U.S.C. § 1331 because this action arises under the Constitution and laws of the United States.

2.3   This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's claim for age discrimination because the claim is so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

2.4   Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in Matagorda County, Texas, which is within the Galveston Division of the Southern District of Texas.

## III.
### THE PARTIES

3.1   Plaintiff Perk Ostrewich is a citizen of Texas and the United States who resides in Montgomery County, Texas. At all times relevant to this action, Mr. Ostrewich was an employee of the City of Palacios, Texas.

3.2   Defendant City of Palacios, Texas is a political subdivision of the State of Texas that may be served with process pursuant to TEX. CIV. PRAC. & REM. CODE § 17.024(b) by serving its mayor, clerk, secretary or treasurer at 311 Henderson Avenue, Palacios, Texas 77465.

3.3   Defendant Tobie Bias is a citizen of Texas who resides in Matagorda

County, Texas. At all times relevant to this Complaint, Defendant Tobie Bias was the Chief of Police for the City of Palacios Police Department. Defendant Tobie Bias may be served at his place of business at 315 Henderson Avenue, Palacios, Texas 77465, or wherever else he may be found.

## IV.
### RELEVANT FACTS

4.1   Plaintiff began working for the Palacios Police Department as a part time officer in February 2016 and became a full time peace officer on October 21, 2021.

4.2   Chief Bias began his tenure as the Chief of Police for the City of Palacios in April 2022.

4.3   While the Chief of Police position was vacant and the City was evaluating candidates for the position, Plaintiff applied for the position at the same time as Chief Bias and was a competitor for the promotion.

4.4   In March 2022, Plaintiff purchased ten acres of agricultural land (the "Land")—land that is suitable for use in production of plants and fruits grown for human or animal consumption, or plants grown for the production of fibers, floriculture, viticulture, horticulture, or planting seed—located in Matagorda County, Texas, from the Tidehaven Independent School District.

4.5   Shortly thereafter, Plaintiff observed farming activity on the Land and found a locked gate blocking his access to the Land.

4.6   Plaintiff later learned that Mr. Juan Lopez was associated with the farming operation on the Land.

4.7  Plaintiff and Plaintiff's wife then met with Juan Lopez to discuss access to the Land and provided Juan Lopez with a copy of the plat.

4.8  Juan Lopez suggested that Plaintiff obtain a survey of the Land and urged Plaintiff to speak with Juan Lopez's brother, Mr. Ramiro Lopez, who Juan Lopez contended ran the farming operation along with Mr. Stephen Heard.

4.9  Plaintiff then contacted Ramiro Lopez and they agreed to meet; however, Ramiro Lopez cancelled the meeting and told Plaintiff that he (Lopez) would neither provide Plaintiff access to the Land nor further discuss the matter until Plaintiff furnished a survey of the Land.

4.10  Plaintiff then met with Mr. Heard, who told Plaintiff that if he (Heard) allowed Plaintiff access to the Land, doing so would jeopardize Heard's business relationship with Ramiro Lopez.

4.11  Mr. Heard then informed Plaintiff that he (Heard) had been leasing the Land from Ramiro Lopez for roughly ten years and that he (Heard) would not discuss the Land with Plaintiff again until he (Heard) spoke to his attorney and Ramiro Lopez.

4.12  During Plaintiff's meeting with Mr. Heard, Plaintiff, who was off duty, did not tell Mr. Heard that he was a law enforcement officer. At the time, Plaintiff was wearing his off-duty badge, and Plaintiff informed Mr. Heard that he was there on a personal matter.

4.13  The above-referenced meetings between Plaintiff and Messrs. Lopez and Heard were cordial.

4.14   During his meetings with Messrs. Lopez and Heard, Plaintiff (1) introduced himself by name; (2) stated that he was there on personal business; (3) showed Mr. Lopez and Mr. Heard a copy of the plat of the Land; and (4) did not harass, threaten, or detain/threaten to detain anyone.

4.15   During his ongoing attempts to protect his legal right to access and control the Land, Plaintiff sent a text message to inform Ramiro Lopez that he (Lopez) was committing criminal trespass by refusing to allow Plaintiff access to the Land.

4.16   After Plaintiff confronted Mr. Lopez and asked him to vacate the Land, Mr. Lopez sold some of the cotton he was growing on the Land for personal gain without Plaintiff's consent.

4.17   On May 19, 2022, Plaintiff filed a criminal complaint with the MCSO regarding the trespass on the Land. While Plaintiff was describing the nature and extent of the trespassing to the MCSO, he explained that the persons who were trespassing were growing cotton on not only the Land but also land that was owned by the school district, the county, and/or other citizens.

4.18   Sergeant Jason Scates of the MCSO received Plaintiff's May 19, 2022 criminal complaint and stated that he would begin an investigation into Plaintiff's complaint.

4.19   Thereafter, Sergeant Scates learned that Ramiro Lopez (along with Juan Lopez and Stephen Heard) was in fact prohibiting Plaintiff from entering the Land, even for the purpose of having a survey completed, and that Mr. Lopez continued to deny Plaintiff access to the Land.

4.20 On June 16, 2022, Sergeant Scates notified Lieutenant Joshua Jones of the Palacios Police Department of Plaintiff's criminal complaint regarding the property dispute over the Land. During this phone call, Sergeant Scates told Lieutenant Jones that Plaintiff had worn his Palacios Police Department badge and holstered weapon during his meetings with Juan Lopez and Stephen Heard.

4.21 Later on June 16, 2022, Chief Bias informed Lieutenant Jones that Ramiro Lopez intended to "file a formal complaint" against Plaintiff. In the memo Chief Bias prepared discussing this alleged intent, Chief Bias stated that it is Mr. Lopez's contention that Plaintiff "acted outside of his jurisdiction during a civil complaint while displaying his duty issued firearm and department issued badge" and Chief Bias directed Lieutenant Jones to "launch an internal investigation into the complaint and to seek out any possible Palacios Police Department policy violations."

4.22 Ramiro Lopez did not file a formal complaint against Plaintiff with any law enforcement agency.

4.23 The written notice of investigation Defendants provided to Plaintiff on June 17, 2022 did not describe the allegations against Plaintiff or the scope of the investigation into Plaintiff's actions.

4.24 On June 17, 2022, Lieutenant Jones asked Plaintiff to (1) submit a written statement of the facts regarding the dispute over the Land; and (2) turn over his personal cell phone.

4.25 On June 18, 2022, Plaintiff submitted his written statement but

informed Lieutenant Jones that he had misplaced his cell phone.

4.26 On June 28, 2022, Sergeant Scates told Plaintiff that the dispute over the Land was civil in nature, not criminal, and told Plaintiff he needed to obtain a survey of the Land before anything would be done to protect his rights.

4.27 Later on June 28, 2022, Chief Bias informed Plaintiff that his employment with the City of Palacios was terminated and completed an F-5 Report that characterized Plaintiff's termination as a "general discharge."

4.28 At the time Plaintiff was terminated, Lieutenant Jones' investigation into the unspecified allegations against Plaintiff was not complete.

4.29 On June 29, 2022, Lieutenant Jones completed the investigation into Plaintiff's unspecified misconduct. He concluded that Plaintiff violated multiple Palacios Police Department policies and possibly one criminal law. Chief Bias also determined that Plaintiff's conversation with Sergeant Scates while making a criminal trespass complaint was "a detriment to the relationship we have built with the Matagorda County Sheriff's Office."

4.30 Lieutenant Jones' investigation focused solely on Plaintiff's speech regarding the Land dispute.

4.31 Lieutenant Jones' findings focused solely on Plaintiff's speech regarding the Land dispute.

4.32 At the time the Palacios Police Department initiated its investigation into Plaintiff's off-the-job activities, no person had signed a written complaint regarding Plaintiff.

4.33    Section 614.022 of the Texas Government Code requires any complaint against an officer to be in writing and signed by the person making the complaint.

4.34    Section 614.023 of the Texas Government Code provides that disciplinary action may not be taken against a police officer unless a copy of the signed complaint is first provided to the officer.

4.35    No signed complaint triggered Defendants' investigation of Plaintiff.

4.36    At no time prior to Plaintiff's termination did Defendants provide Plaintiff with a signed complaint that complied with § 614.023 of the Texas Government Code.

4.37    None of the alleged conduct that resulted in the termination of Plaintiff's employment occurred while Plaintiff was on duty.

4.38    The Palacios Police Department investigated Plaintiff even though Ramiro Lopez—the supposed key witness—never submitted a written statement during the investigation.

4.39    After being fired, Plaintiff challenged his "general discharge" designation in an F-5 proceeding. This proceeding took place between July 28, 2022 and March 3, 2023, and an Administrative Law Judge (ALJ) thereafter issued a Decision and Order that included the following findings of fact:

   a) Plaintiff did not fail to follow any direct order;

   b) During Plaintiff's employment with the Palacios Police Department, there was no published policy requiring officers to conceal their weapons when off-duty;

   c) Plaintiff was never made aware of a Palacios Police Department policy that required officers to conceal their weapons when off-duty; and

    d) Plaintiff did not engage in misconduct that would support a general discharge.

4.40    After a full F-5 hearing on the merits in which Plaintiff contested the designation of his firing as a general discharge, the ALJ reversed and ordered the Texas Commission on Law Enforcement to change Plaintiff's separation to reflect an honorable discharge.

4.41    Plaintiff was not terminated for any work-related misconduct or unsatisfactory job performance.

4.42    At the time of his firing, Plaintiff had never been formally or informally disciplined for violating any meaningful work-related rule, policy, or procedure.

4.43    As a member of law enforcement, Chief Bias has been trained on and understands the free speech protections afforded by the First Amendment.

4.44    On May 1, 2022, Chief Bias authored and implemented Chapter 2 of the Palacios Police Department policy entitled "Professional Standards of Conduct – *Code of Ethics*" (the "Professional Standards").

4.45    Defendants expressly relied on Plaintiff's alleged violation of the following provisions in the Professional Standards as grounds for firing Plaintiff:

    a) Chapter 2.06(D)(3)
    b) Chapter 2.06(D)(4)
    c) Chapter 2.06(D)(6)
    d) Chapter 2.06(D)(18)
    e) Chapter 2.06(E)(1)
    f) Chapter 2.06(E)(5)
    g) Chapter 2.06(G)
    h) Chapter 2.06(J)(6)

4.46   During his tenure as Chief of Police for the City of Palacios, Chief Bias authored, promulgated, and administered each of the Professional Standards enumerated in paragraphs 4.45(a)-(h).

4.47   Each of the Professional Standards enumerated in paragraphs 4.45(a)-(h) is an official policy of the City of Palacios Police Department.

4.48   The City of Palacios delegated policymaking power and authority to Chief Bias, who is an official responsible for internal police policy at the Palacios Police Department.

4.49   At all relevant times, Chief Bias retained the power to hire, fire, and make final personnel policy for employees of the Palacios Police Department, including but not limited to Plaintiff.

4.50   In addition to his official title as Chief of Police for the City of Palacios, Chief Bias has also referred to himself in written Police Department policies as the "Chief Administrator" for the City of Palacios Police Department.

4.51   Chief Bias made the decision to terminate Plaintiff's employment.

4.52   Chief Bias exercised his official power by unconstitutionally terminating Plaintiff for speaking out about a violation of his First Amendment rights.

4.53   Defendants have not implemented any internal grievance procedures or mechanisms that would have enabled Plaintiff to grieve and perhaps overturn the termination decision.

4.54   Defendants' decision to terminate Plaintiff's employment was based solely on conduct that Plaintiff allegedly exhibited while he was off duty.

4.55  Plaintiff was treated less favorably than other similarly situated employees who are younger than him and did not exercise their First Amendment rights. For example, Plaintiff was fired based on the application and enforcement of employment rules, policies, and procedures that are either not written, not typically enforced, or were disparately (more strictly) enforced against Plaintiff than his peers.

4.56  One alleged reason for Plaintiff's firing was the allegation that he was wearing a sidearm and badge while off duty, yet similarly situated officers who have done this have neither been fired nor disciplined.

4.57  Whereas other similarly situated officers were given lesser discipline and/or progressive discipline for alleged misconduct, Plaintiff was terminated despite having no history of meaningful misconduct and no history of lesser (progressive) discipline.

4.58  Based upon information and belief, Defendants replaced Plaintiff with another officer who is significantly younger than Plaintiff and/or outside of the protected age class.

## V.
### FIRST CAUSE OF ACTION: FIRST AMENDMENT RETALIATION

5.1 Plaintiff reasserts and incorporates by reference each of the above numbered paragraphs.

5.2  Plaintiff engaged in protected free speech as a citizen concerning a matter of public concern when he reported a violation of his property rights by filing a criminal complaint with the MCSO regarding a trespassing violation on Plaintiff's Land and engaged in other federally protected free speech in connection with his

attempt to protect his and others' land rights (as the trespassers were also trespassing on/denying other landowners access to their land.

5.3 The free speech that triggered Plaintiff's firing was made while he was off-duty, and such speech had nothing to do with Plaintiff's employment or employment matters.

5.4 The termination of Plaintiff's employment was motivated by Plaintiff's free speech, and the policies Defendants authored, promulgated, and administered by Chief Bias were the moving force behind Defendants' termination of Plaintiff's employment.

5.5 Chief Bias is individually liable under 42 U.S.C. § 1983 because free speech is a clearly established constitutional right that precludes qualified immunity.

5.6 The City is liable under 42 U.S.C. § 1983 because the decision to terminate Plaintiff was made by an official (Chief Bias) to whom the City impliedly delegated its policymaking authority.

5.7 Defendants violated the United States Constitution when they terminated Plaintiff for engaging in protected free speech.

## VI.
### SECOND CAUSE OF ACTION: TEXAS CONSTITUTION VIOLATION

6.1 Plaintiff reasserts and incorporates by reference each of the above numbered paragraphs.

6.2 Plaintiff engaged in protected free speech as a citizen concerning a matter of public concern when he reported a violation of his property rights by filing a criminal complaint with the MCSO regarding a trespassing violation on Plaintiff's

Land and engaged in other federally protected free speech in connection with his attempt to protect his and others' land rights. The free speech that triggered Plaintiff's firing was made while he was off-duty, and such speech had nothing to do with Plaintiff's employment or employment matters.

6.3   The termination of Plaintiff's employment was motivated by Plaintiff's free speech, and the policies Defendants authored, promulgated, and administered by Chief Bias were the moving force behind Defendants' termination of Plaintiff's employment.

6.4   Chief Bias is individually liable under 42 U.S.C. § 1983 because free speech is a clearly established constitutional right that precludes qualified immunity.

6.5   The City is liable under 42 U.S.C. § 1983 because the decision to terminate Plaintiff was made by an official (Chief Bias) to whom the City impliedly delegated its policymaking authority.

6.6   Defendants violated article 1, section 8 of the Texas Constitution when they terminated Plaintiff for engaging in protected free speech.

## VII.
### THIRD CAUSE OF ACTION: AGE DISCRIMINATION (ADEA)

7.1   Plaintiff reasserts and incorporates by reference each of the above numbered paragraphs.

7.2   Plaintiff asserts a cause of action under the Age Discrimination in Employment Act of 1967 (ADEA).

7.3   Plaintiff's ADEA cause of action is asserted solely in the alternative to Plaintiff's First Amendment and Texas Constitution causes of action.

7.4   Plaintiff is 66 years of age.

7.5   Plaintiff was qualified for his position and was performing his job satisfactorily at the time of his termination.

7.6   Plaintiff was terminated despite having no history of disciplinary infractions and was treated less favorably than other similarly situated employees who are younger than him and did not exercise their First Amendment rights.

7.7   Plaintiff was fired based on the application and enforcement of employment rules, policies, and procedures that are either not written, not typically enforced, or were disparately and more strictly enforced against Plaintiff than his peers. For example, one alleged reason for Plaintiff's firing was the allegation that he was wearing a sidearm and badge while off duty, yet other officers routinely do the same thing and are neither fired nor even disciplined.

7.8   Whereas other similarly situated officers were given lesser discipline and/or progressive discipline for alleged misconduct, Plaintiff was terminated despite having no meaningful disciplinary history.

7.9   To the extent the termination of Plaintiff was not motivated by his protected free speech, it was based on Plaintiff's age and Defendants' desire to replace him with a younger officer.

7.10   Plaintiff would have been subjected to lesser discipline or no discipline if he was a younger worker at the time of the relevant events underlying his termination.

7.11   Based upon information and belief, Defendants replaced Plaintiff with

an officer who is much younger than Plaintiff and/or is not protected by the ADEA.

## VIII.
### DAMAGES AND OTHER RELIEF SOUGHT

8.1   Plaintiff demands a trial by jury and seeks judgment in his favor and the following damages and other relief as a result of Defendants' unlawful conduct:

a. Actual damages;

b. Compensatory damages, including but not limited to damages for emotional distress and mental anguish;

c. Back pay;

d. Front pay or, in lieu of front pay, equitable relief in the form of reinstatement and all pay, benefits, and other privileges and emoluments of employment that Plaintiff enjoyed prior to his termination;

e. Injunctive relief;

f. Pre-judgment interest as permitted by law;

g. Post-judgment interest as permitted by law;

h. All other damages to which Plaintiff is lawfully entitled;

i. Reasonable and necessary attorney's fees, including appellate fees; and

j. Taxable costs of court.

Respectfully submitted,

**MINCES RANKIN PLLC**

By:   */s/ David M. Minces*
**David M. Minces**
Attorney-in-Charge
Federal I.D. No.: 435389
State Bar No.: 24026880
Email: david@mincesrankin.com
4545 Bissonnet Street, Suite 286
Bellaire, Texas 77401
Telephone: (346) 701-8563
Facsimile: (713) 583-9795

**ATTORNEY FOR PLAINTIFF**

15