United States District Court
Southern District of Texas
**ENTERED**
March 25, 2024
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION**

| | |
|---|---|
| PERK OSTREWICH, § § Plaintiff. § § v. § CIVIL ACTION NO. 3:23-cv-00110 § CITY OF PALACIOS, TEXAS, *et al.*, § § Defendants. § | |

## OPINION AND ORDER

Pending before me is a Motion to Dismiss filed by Defendants City of Palacios, Texas ("the City") and Palacios Police Department Chief Tobie Bias ("Bias") (collectively, "Defendants"). Dkt. 11. Having reviewed the record, the briefing, and the applicable law, I **GRANT** Defendants' Motion to Dismiss.

## BACKGROUND

Plaintiff Perk Ostrewich ("Ostrewich") worked as a police officer in the Palacios Police Department from February 2016 until his termination on June 28, 2022. Ostrewich claims his termination was the result of First Amendment retaliation or, "solely in the alternative," age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"). Dkt. 8 at 17.

The factual allegations set forth in the live pleading, the First Amended Complaint are as follows: In March 2022, Ostrewich purchased 10 acres of agricultural land in Matagorda County ("the Land") from Tidehaven Independent School District ("Tidehaven ISD"). After he purchased the Land, Ostrewich "observed farming activity on the Land and found a locked gate blocking his access to the Land." *Id.* at 3. Ostrewich learned that "Juan Lopez was associated with the farming operation on the Land." *Id.*

Ostrewich and his wife "then met with Juan Lopez to discuss access to the Land and provided [him] with a copy of the plat." *Id.* Juan Lopez suggested

Ostrewich obtain a survey of the Land, and encouraged him to speak with the two individuals who ran the farming operation on the Land—Juan Lopez's brother, Ramiro Lopez, and Stephen Heard ("Heard").

Ostrewich reached out to both Ramiro Lopez and Heard. Ramiro Lopez refused to discuss the Land with Ostrewich, but Heard agreed to talk with Ostrewich. While off duty in plain clothes—but wearing his off-duty badge and a visibly holstered weapon—Ostrewich met with Heard. Ostrewich alleges that he "informed Mr. Heard that he was there on a personal matter," and "did not tell Mr. Heard that he was a law enforcement officer." *Id.* at 4. Heard declined to further discuss the issue of accessing the Land "until he (Heard) spoke to his attorney and Ramiro Lopez." *Id.* Ostrewich maintains that his interactions with Juan Lopez and Heard "were cordial," and Ostrewich disclaims that he harassed or threatened either of them. *Id.*

Ostrewich later sent a text message to Ramiro Lopez, informing Ramiro Lopez that he "was committing criminal trespass by refusing to allow [Ostrewich] access to the Land." *Id.* at 5.

On May 19, 2022, Ostrewich filed a criminal complaint with the Matagorda County Sheriff's Office ("MCSO") "regarding the trespass on the Land." *Id.* Ostrewich "explained that the persons who were trespassing were growing cotton on not only the Land but also on land believed to be owned by [Tidehaven ISD], [Matagorda County], and/or other citizens." *Id.* MCSO Sergeant Jason Scates ("Scates") investigated the allegations set forth in Ostrewich's criminal complaint.

On June 16, 2022, Scates notified Palacios Police Department Lieutenant Joshua Jones ("Jones") of Ostrewich's complaint filed with the MCSO. Scates told Jones that Ostrewich "had worn his Palacios Police Department badge and holstered weapon during his meetings with Juan Lopez and Stephen Heard." *Id.* at 5–6. That same day, Bias informed Jones via written memorandum that "Mr. Lopez" intended to file a formal complaint with the Palacios Police Department regarding Ostrewich. Dkt. 8-1 at 2. Bias wrote, "[i]t is Mr. Lopez's contention that

Officer [Ostrewich] acted outside of his jurisdiction during a civil complaint while displaying his duty issued firearm and department issued badge." *Id.* Bias directed Jones to "launch an internal investigation into the complaint and to seek out any possible Palacios Police Department policy violations." *Id.*

Jones provided a written notice of the investigation to Ostrewich on June 17, 2022. Ostrewich submitted a formal written statement to Jones the following day. In that statement, Ostrewich recounted that he "immediately told Mr. Heard [during their meeting] that he was not in trouble and this is not an official visit.'" Dkt. 8-3 at 3. Ostrewich recounted that he thrice disclaimed representing Matagorda County to Heard, but that he did tell Heard "he should probably stop growing crops on County property" because "it is not the [Lopez brothers'] property to lease.'" *Id.*

On June 28, 2022, Scates told Ostrewich "that the dispute over the Land was civil in nature, not criminal." Dkt. 8 at 7. That same day, "Bias informed [Ostrewich] that his employment with the City of Palacios was terminated." *Id.* Ostrewich's discharge was characterized as a general discharge.

On June 29, 2022, Jones completed his investigation and compiled a report outlining 11 Palacios Police Department policy violations that Ostrewich committed. *See* Dkt. 8-4. In a June 30, 2022 memorandum, Bias wrote that on June 28, 2022, Scates requested Bias listen to a recording of a phone conversation Scates had just concluded with Ostrewich. Bias explained that during the phone conversation, "Ostrewich began to get irate and cursed at Sgt. Scates multiple times" and "accursed [sic] deputies of the MCSO of taking bribes from the other parties involved and continued to curse at Sgt. Scates" before Ostrewich "demanded to speak with the Lieutenant." Dkt. 8-5 at 3. "Bias also wrote in the Memorandum that [Ostrewich]'s conversation with Sergeant Scates . . . was 'a detriment to the relationship we have built with the Matagorda County Sheriff's Office.'" Dkt. 8 at 9 (quoting Dkt. 8-5 at 3).

Following his termination, Ostrewich appealed the characterization of his discharge in an administrative proceeding.

> This proceeding took place between July 28, 2022 and March 3, 2023, and an Administrative Law Judge (ALJ) thereafter issued a Decision and Order that included the following findings of fact:
>
> a) [Ostrewich] did not fail to follow any direct order;
>
> b) During [Ostrewich]'s employment with the Palacios Police Department, there was no published policy requiring officers to conceal their weapons when off-duty;
>
> c) [Ostrewich] was never made aware of a Palacios Police Department policy that required officers to conceal their weapons when off-duty; and
>
> d) [Ostrewich] did not engage in misconduct that would support a general discharge.

Dkt. 8 at 10. Ultimately, "the ALJ reversed [the characterization of Ostrewich's discharge as general] and ordered the Texas Commission on Law Enforcement to recharacterize [Ostrewich]'s separation as an honorable discharge." *Id.* at 11.

Ostrewich brings the following claims against Defendants: (1) First Amendment retaliation pursuant to 42 U.S.C. § 1983; (2) violation of Article I, § 8 of the Texas Constitution; and (3) age discrimination under the ADEA.

## LEGAL STANDARD

A complaint may be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although a complaint need not contain detailed factual allegations, it "must provide the plaintiff's grounds for entitlement to relief— including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)

4

(quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Thus, a claim "is implausible on its face when 'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct.'" *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 796 (5th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 679). I must accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (quotation omitted). "[A] motion to dismiss under 12(b)(6) is viewed with disfavor and is rarely granted." *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quotation omitted).

"Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (quotation omitted).

## ANALYSIS

### A. FIRST AMENDMENT RETALIATION CLAIM AGAINST BIAS

Ostrewich alleges Bias retaliated against him for exercising his First Amendment rights.

"Section 1983 provides a private cause of action against those who, under color of law, deprive a citizen of the United States of 'any rights, privileges, or immunities secured by the Constitution and laws.'" *Goodman v. Harris Cnty.*, 571 F.3d 388, 394–95 (5th Cir. 2009) (quoting 42 U.S.C. § 1983). To establish First Amendment retaliation under § 1983, Ostrewich, as a public employee, must show: "(1) he suffered an adverse employment action; (2) he spoke as a citizen on a matter of public concern; (3) his interest in the speech outweighs the government's interest in the efficient provision of public services; and (4) the speech precipitated the adverse employment action." *Wilson v. Tregre*, 787 F.3d 322, 325 (5th Cir. 2015) (quoting *Nixon v. City of Houston*, 511 F.3d 494, 497 (5th Cir. 2007)).

Neither party disputes that Ostrewich's termination constitutes an adverse employment action, or that Ostrewich's speech—specifically, Ostrewich's June 28, 2022 phone call with Scates—precipitated the adverse employment action. Only the second and third prongs are in dispute. I will assume, without deciding, that Ostrewich spoke as a citizen.

### 1. *Ostrewich Did Not Speak on a Matter of Public Concern*

"The rationale behind the public concern requirement is to prevent public employees from relying on the Constitution for redress of personal grievances." *Thompson v. City of Starkville*, 901 F.2d 456, 461 (5th Cir. 1990). "Matters of public concern are those which can 'be fairly considered as relating to any matter of political, social, or other concern to the community.'" *Branton v. City of Dall.*, 272 F.3d 730, 739 (5th Cir. 2001) (quoting *Connick v. Myers*, 461 U.S. 138, 146 (1983)). Whether a public "employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48. "The court may therefore be required to assess the primary motivation of the speaker in evaluating whether her speech addresses a matter of public concern." *Dodds v. Childers*, 933 F.2d 271, 273 (5th Cir. 1991). "All speech arising from mixed motives . . . is not automatically protected; the speaker must have spoken *predominantly* as a citizen to trigger First Amendment protection." *Id.* at 274 (quotation omitted).

With this rubric in mind, I turn to the question of whether Ostrewich spoke on a matter of public concern.

As an initial matter, I must decide what speech is relevant, as there are numerous instances of speech referenced in the First Amended Complaint. Ostrewich attached Bias's June 30, 2022 memorandum to the First Amended Complaint. *See* Dkt. 8-5. Neither party contests the authenticity of this document, or the veracity of its contents. Specifically, Ostrewich does not contest that he spoke with Scates by phone on June 28, 2022, or that he "cursed at Sgt. Scates multiple times" while "accu[sing] deputies of the MCSO of taking bribes from the

6

other parties involved and continu[ing] to curse at Sgt. Scates." *Id.* at 3. Nor does Ostrewich contest that Bias terminated Ostrewich's employment mere hours after Ostrewich's phone call with Scates because of "the way [Ostrewich] conducted himself with Sgt. Scates." *Id.* Ostrewich himself acknowledges that "Defendants['] firing of [Ostrewich] was based in part on speech [Ostrewich] directed toward the MCSO in conjunction with [Ostrewich]'s criminal complaint." Dkt. 8 at 10. To the extent Ostrewich purports to allege that Bias fired him for some reason *other* than "the way [Ostrewich] conducted himself with Sgt. Scates," Dkt. 8-5 at 3, I decline to credit such allegations.[1]

"[A] court is not required to strain to find inferences favorable to the plaintiff and is not to accept conclusory allegations, unwarranted deductions, or legal conclusions." *Cicalese v. Univ. of Tex. Med. Branch*, 456 F. Supp. 3d 859, 866 (S.D. Tex. 2020). "Where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Id.* (cleaned up). Ostrewich has attached, adopted, and relied on Bias's June 30, 2022 memorandum in the First Amended Complaint. Ostrewich never disputes a single fact in the June 30, 2022 memorandum, which is just as much a part of the complaint as Ostrewich's allegations. *See Wolcott*, 635 F.3d at 763. Ostrewich did not attach Bias's June 30, 2022 memorandum to the First Amended Complaint for the purpose of showing how its falsity harmed him. To the contrary, Ostrewich believes Bias's

---

[1] Defendants contend broadly that Ostrewich "was fired for misuse of Plaintiff's authority as a Palacios police officer." Dkt. 11 at 10. This misuse of authority included Ostrewich wearing his off-duty badge and service weapon to his private meetings with Juan Lopez and Heard. *See* Dkt. 8 at 5–6; Dkt. 8-1 at 2; Dkt. 8-3 at 3; Dkt. 8-5 at 2. Ostrewich makes too much of the fact that "there was no published policy requiring officers to conceal their weapons when off-duty." Dkt. 8 at 10. While this may have been a sufficient reason for the ALJ to change the characterization of Ostrewich's discharge from general to honorable, it has no bearing on the relevant question: whether Ostrewich has a free-speech interest in displaying municipal property while off-duty. He does not. *See, e.g.*, *Shelby Cnty. Deputy Sheriffs' Ass'n v. Gilless*, 67 F. App'x 860, 862 (6th Cir. 2003) (holding that wearing sheriff's uniform off-duty did not implicate speech of public concern).

memorandum is the backbone of his retaliation claim. *See* Dkt. 8 at 8–9. Indeed, Ostrewich acknowledges in his response that Bias "linked" Ostrewich's speech "about the manner in which the MCSO was responding to [Ostrewich]'s complaints . . . to the firing decision." Dkt. 13 at 17. Thus, the only speech I must consider is Ostrewich's speech to Scates during their June 28, 2022 phone call.[2]

According to the First Amended Complaint, the only matters of public concern that Ostrewich raised during his June 28, 2022 phone call with Scates were "whether a police officer is honestly fulfilling his obligations as a public servant"; "whether a government official is taking bribes"; and "whether a law enforcement organization is conducting a legitimate investigation into a criminal complaint regarding trespassing and/or theft of property." Dkt. 8 at 15.

It is true that "[e]xposing governmental inefficiency and misconduct is a matter of considerable significance." *Garcetti v. Ceballos*, 547 U.S. 410, 425 (2006). "There is perhaps no subset of matters of public concern more important, for purposes of First Amendment protection of speech of public employees, than bringing official misconduct to light." *Branton*, 272 F.3d at 740 (cleaned up). Yet, Ostrewich's own complaint demonstrates that his speech was not made for the purpose of bringing official misconduct to light.

To start, Ostrewich's speech was directed *at the person he was accusing*. Ostrewich did not speak publicly to make a complaint, formally or otherwise. *See Dodds*, 933 F.2d at 274 ("The private form and context of speech, while not dispositive, are relevant factors in assessing whether that speech addresses a matter of public concern."). Ostrewich "did not address [his] complaints to anyone [besides Scates], nor did [Ostrewich's] complaints occur against a background of

---

[2] I may assume that by filing his criminal complaint with MCSO, Ostrewich was speaking as a private citizen on a matter of public concern. Even so, that is irrelevant because there is no plausible way to read the allegations in the First Amended Complaint as establishing that his firing was connected to the *filing* of the criminal complaint. *See Wilson*, 787 F.3d at 325 (requiring "the speech to precipitate[] the adverse employment action" in a plausibly alleged claim of First Amendment retaliation).

8

ongoing public debate" about how MCSO conducts investigations. *Id*. Ostrewich lobbed his allegations at Scates "only after Sergeant Scates informed [Ostrewich] the land dispute was civil in nature." Dkt. 21 at 4. Moreover, Ostrewich does not allege that he provided any substance to Scates to support his allegations of bribery and misconduct. Ostrewich's allegations were accompanied only by "obscene and vulgar language." Dkt. 8-4 at 7. This is a far cry from circumstances in which public officials were found to have spoken on matters of public concern.

For example, the protected speech in *Branton* was an internal affairs investigative officer pulling aside an Assistant City Manager after a disciplinary hearing to tell him *why* she believed a witness's testimony was false. *See* 272 F.3d at 735–36. Similarly, in *Benningfield v. City of Houston*, the Fifth Circuit found that internal grievances filed by female employees of the Houston Police Department were protected speech where the women "complained about contamination of criminal histories" in their internal grievances about "mismanagement, gender discrimination, and a hostile work environment." 157 F.3d 369, 375 (5th Cir. 1998). Ostrewich tries to analogize his speech to the speech in *Benningfield*, arguing that his "speech was of public concern, not only because of the suspected crimes he reported to the MCSO but also because [he] spoke out about the manner in which the MCSO was responding to those complaints." Dkt. 13 at 17. But Ostrewich did not speak *out*. Again, the only person he spoke to was Scates. And the *form* of Ostrewich's speech, which was the basis for his termination, was the type of heated language that arises amidst deeply personal disputes. "Thus, neither the form, content, nor context of [Ostrewich]'s speech suggests that [he] addressed a matter of public concern." *Dodds*, 933 F.2d at 274.

This is not to say that a public-official plaintiff bringing a First Amendment retaliation claim must establish the truth of the concerns raised in the speech at issue or avoid coarse language. It is only to say that, for such speech to be a matter of public concern, it must be more than a vulgar and baseless allegation made only to the person who is the subject of the allegation. Otherwise, all manner of incivility

9

would be immunized by the First Amendment. For this reason, even if Ostrewich's speech to Scates during their June 28, 2022 phone call touched on a matter of public concern (it did not), it would fail the third prong.

### 2. *State Interests Outweigh Ostrewich's Free-Speech Interest*

Speech by a private citizen on a matter of public concern is protected *only* if the plaintiff's "interest in free speech outweighs the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employees." *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 223 (5th Cir. 1999) (quotation omitted). A plaintiff's free-speech interests do not outweigh the government's interest in preserving "the kind of close working relationships for which it can persuasively be claimed that personal loyalty and confidence are necessary to their proper functioning." *Pickering v. Bd. of Ed. of Tp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 570 (1968).

Again, Ostrewich made Bias's June 30, 2022 memorandum part of the First Amended Complaint without disputing any part of it. One part of that memorandum states that Bias "'determined that the conversation [Ostrewich] had with Sgt. Scates . . . *was a detriment to the relationship we have built with the Matagorda County Sheriff's Office.*'" Dkt. 8 at 9 (emphasis added) (quoting Dkt. 8-5 at 3). Ostrewich does not dispute this statement. Cursing out a fellow law enforcement officer while lobbing baseless allegations at said officer certainly "demonstrated a character trait that made [Ostrewich] unfit to perform [his] work" as a law enforcement officer. *Rankin v. McPherson*, 483 U.S. 378, 379 (1987).[3] Because Ostrewich, as a law enforcement officer, holds a "confidential" and "public contact role," his speech to Scates during their June 28, 2022 phone call was

---

[3] According to the Law Enforcement Code of Ethics adopted by the Palacios Police Department, which applies to a law enforcement officer's "private life," Ostrewich was sworn to "behave in a manner that does not bring discredit to [himself] or to [his] agency"; to exercise "self-restraint"; and to "never . . . permit personal feelings [or] animosities . . . to influence [his] decisions." Dkt. 8-4 at 5.

10

"susceptible of being interpreted by [Bias] as an indication that [he] may be unworthy of employment in his law enforcement agency." *Id.* at 390–91.

\* \* \*

For these reasons, Ostrewich's First Amendment claim fails. Because Ostrewich cannot establish a constitutional violation, he also cannot overcome Bias's qualified immunity. *See Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." (quotation omitted)).[4]

## B.   FIRST AMENDMENT RETALIATION CLAIM AGAINST THE CITY

Ostrewich also brings a First Amendment retaliation claim under § 1983 against the City. "For [the City] to be liable under § 1983, [Ostrewich] must show (1) a policymaker, (2) an official policy, and (3) a violation of constitutional rights whose moving force is the policy or custom." *Sweetin v. City of Tex. City*, 48 F.4th 387, 392 (5th Cir. 2022) (quotation omitted).

As discussed above, Ostrewich cannot establish a violation of his constitutional rights. Thus, there is no constitutional violation for which the City could conceivably be liable. Even if Ostrewich could establish a violation of his constitutional rights, he cannot establish the City's liability for such a violation. The City Manager is the final policymaker, not Bias. *See* Palacios, Tex., Home Rule Charter, art. IV, § 4.01(d)(2) (2004) ("The City Manager shall appoint and remove all department heads and subordinate employees of the City except as otherwise provided in this Charter; the City Manager may authorize department heads to appoint and remove subordinates." (cleaned up)). Nor can Ostrewich establish an

---

[4] Even if Ostrewich could establish a constitutional violation (he cannot), he points me to no law clearly establishing that a police chief violates the First Amendment when he fires a police officer for demonstrating questionable judgment by wearing his off-duty badge and weapon to confront private citizens about a personal matter, and for cursing out and lobbing baseless allegations of bribery and misconduct at a fellow law enforcement officer.

11

official policy or custom. To plausibly "plead a practice so persistent and widespread as to practically have the force of law, [Ostrewich] must do more than describe the incident that gave rise to his injury." *Ratliff v. Aransas Cnty.*, 948 F.3d 281, 285 (5th Cir. 2020) (cleaned up). Thus, Ostrewich's First Amendment retaliation claim against the City fails.

C. **OSTREWICH'S CLAIM UNDER ART. I, § 8 OF THE TEXAS CONSTITUTION**

Ostrewich also brings a claim against Defendants for violating Article I, § 8 of the Texas Constitution. The Texas Supreme Court has "decline[d] to hold that the Texas Constitution affords . . . greater rights than does the First Amendment." *Tex. Dep't of Transp. v. Barber*, 111 S.W.3d 86, 106 (Tex. 2003). Thus, this claim fails when analyzed, as it must be, "under the same framework as the § 1983 First Amendment retaliation claim." *Foerster v. Bleess*, No. 4:20-cv-1782, 2020 WL 6588731, at *3 (S.D. Tex. Oct. 16, 2020).

D. **VIOLATION OF THE ADEA**

Lastly, Ostrewich brings a cause of action against Defendants for violation of the ADEA "solely in the alternative to [his] First Amendment and Texas Constitution causes of action." Dkt. 8 at 17.

The ADEA provides, in relevant part, that "[i]t shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To state a claim of age discrimination under the ADEA, Ostrewich must allege: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Goudeau v. Nat'l Oilwell Varco, LP*, 793 F.3d 470, 474 (5th Cir. 2015).

"[A]lthough plaintiffs do not have to submit evidence to establish a prima facie case of discrimination at this stage, they must plead sufficient facts on all of

12

the *ultimate elements* . . . to make their case plausible." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 766 (5th Cir. 2019) (cleaned up). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under [the ADEA]: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Id.* at 767 (quotation omitted); *see also Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009) ("To establish a disparate-treatment claim under the plain language of the ADEA, therefore, a plaintiff must prove that age was the 'but-for' cause of the employer's adverse decision.").

Ostrewich cannot establish that age was the but-for cause of his firing. Ostrewich himself has pleaded that "Defendants' decision to terminate [his] employment was based *solely* on conduct that [he] allegedly exhibited while he was off duty." Dkt. 8 at 13 (emphasis added). Ostrewich makes no attempt to suggest why this allegation, which is the backbone of his primary claims, is pretextual. Accordingly, Ostrewich's ADEA claim against Defendants fails. *See Mora v. Univ. of Tex. Sw. Med. Ctr.*, 469 F. App'x 295, 299 (5th Cir. 2012) (affirming dismissal where plaintiff's allegation was "contradicted by the other facts alleged in the complaint, making the claim implausible on its face").

## CONCLUSION

For the reasons discussed above, the Defendants' Motion to Dismiss (Dkt. 11) is **GRANTED**. This case is dismissed. I will issue a final judgment separately.

SIGNED this 25th day of March 2024.

_____
ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE